IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Vaseem S. Hadi                                    Case No.: 2:07-CV-0060

       Plaintiff                          Judge Graham

    v.                                           Magistrate Judge Kemp

State Farm Insurance Companies d/b/a
State Farm Mutual Automobile Insurance Co.

       Defendant.


OPINION AND ORDER


     This matter is before the Court on a motion for summary judgment, pursuant to Fed. R. Civ. 56(c) filed by defendant State Farm Insurance Companies d/b/a State Farm Mutual Automobile Insurance Co. (State Farm).  Plaintiff  Vaseem S. Hadi asserts claims for tortious interference with an employment relationship (Count I); breach of duty of good faith and fair dealing (Count II); breach of contract (Count III); intentional misrepresentation/fraud (Count IV); negligent misrepresentation (Count V); defamation (Count VI); intentional infliction of emotional distress (Count VII); negligent infliction of emotional distress (Count VIII); punitive damages (Count IX); and respondeat superior (Count X).  Defendant moves for summary judgment on Counts I through VIII.[1]

_____

[1]     Defendant did not move on plaintiff's claim for punitive damages or respondeat superior because these are not substantive causes of action. (Doc. 100-3 p. 1). As neither party addressed these two issues, the court will refrain from doing so as well.

As set forth below, the Court grants in part and denies in part the defendant's motion for summary judgment.

## I.      Factual background

Many of the facts in this case are disputed.  However, in considering a motion for summary judgment, the trial court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. <u>Fisher v. Harden</u>, 437 F. Supp. 2d 700 (S.D. Ohio 2006).

On or about July 12, 2005, plaintiff Hadi was involved in a motor vehicle accident caused by Judy Brooks. At the time of the accident, both Hadi and Brooks maintained automobile insurance policies with State Farm. Hadi filed a claim with State Farm to recover damages under the Brooks' policy, including payment and reimbursement for his medical expenses.  After his claim was filed, Hadi was contacted by a State Farm claims adjuster, Carla Wilborn,  who informed him that liability had been conceded.  Wilborn asked Hadi to consent to allowing her to serve as adjuster for both parties.  According to Hadi, Wilborn informed him that it was State Farm's policy to assign one claims adjuster for property damage to both drivers involved in a collision when both drivers are insured by State Farm (known as a "double with") and liability is conceded.

As part of her initial intake of information, Wilborn learned that Hadi was an associate attorney with the law firm of Freund, Freeze & Arnold (FFA) in Dayton, Ohio.  Wilborn was aware that State Farm was a client of FFA and specifically of one of the firm's founding partners, Gordon Arnold (Arnold).  Wilborn never asked Hadi if he was aware that State Farm was a client of FFA or whether he worked on any State Farm files.  Hadi asserts that he was

unaware that FFA had State Farm as a client.

Because Hadi was seeking medical treatment for injuries he allegedly sustained in the accident, Wilborn suggested that it would be more convenient if he submitted his medical bills for payment under his own State Farm policy. She informed him that the payments made by his policy would be reimbursed by the Brooks' policy. It was Hadi's understanding that Wilborn was the adjuster handling both medical payments under his policy as well as any liability payments under the Brooks policy. With the understanding that the Brooks policy would reimburse his policy, Hadi submitted his medical bills for payment under his policy. However, when he submitted his demand for settlement under the Brooks' policy, Wilborn offered only $4,000.00, inclusive of the lien for $5,000.00 paid by his own policy[2] and $870.00 still owed to Hadi's physicians. Hadi rejected the offer and the settlement discussions became more contentious. Despite receiving an offer from Hadi to submit to an independent medical examination, and despite letters of necessity from his physicians, Wilborn refused to reevaluate the offer. At this point, Hadi requested that a separate adjuster be assigned to his claim and was informed that Wilborn was never the adjuster on the medical payments claim.

At some point, Ms. Wilborn's supervisor, Gery Faloon (Faloon) became aware of Hadi's claim against the Brooks policy and of the fact that Hadi was employed by FFA. Faloon then enlisted the assistance of a different State Farm claims adjuster who was not handling the Hadi matter, Johanna Capadonna. Ms. Capadonna had a long standing relationship with various lawyers at FFA who had handled State Farm cases, including FFA shareholder T. Andrew Vollmar (Vollmar) as well as a personal friendship with Arnold. Faloon requested that

_____

[2]Hadi incurred $6,500.00 in medical bills, of which $5,000.00 was paid by Hadi's policy.

Capadonna inquire with FFA as to whether there was any conflict of interest with respect to Hadi's claim and to make sure he was not working on any State Farm files. Faloon asked Capadonna, rather than Wilborn, to make contact with FFA because Capadonna had a "long standing relationship" with FFA. (Faloon Depo at p. 36). Faloon did not believe that Capadonna would have had access to Hadi's file because she was not the adjuster on the case. He recalled informing her, however, of the fact that there had been an issue with the rental car provided to Hadi.

At some point Capadonna and Vollmar met to discuss various cases that FFA had involving State Farm. At this meeting, Capadonna informed Vollmar of the fact that Hadi had a claim against State Farm that was becoming "contentious." (Vollmar Depo at p. 9). Vollmar further testified at his deposition that Capadonna provided him with specifics about Hadi's claim and issues of dispute and stated that Hadi had "mentioned our firm's name and stated something to the effect of his surprise about the way State Farm people were treating him because he worked for one of their defense firms." (Vollmar Depo at p. 10). Capadonna denies that she made any statements regarding the facts of Hadi's claim and says that she only mentioned that the claim was contentious and inquired as to whether Hadi worked on any State Farm files.

Concerned with the fact that Hadi was involved in a claim with a FFA client, and the potential that he was misusing his position with FFA to leverage special treatment from State Farm, Vollmar informed Arnold about his conversation with Capadonna. Shortly thereafter, Hadi was called into Arnold's office for a closed door meeting. According to Hadi, Arnold screamed at him and told him he could not be trusted, that he had poor judgment, lacked intelligence and did not consider the best interests of the firm or Arnold. (Hadi Depo at 161). Arnold also told Hadi that his settlement demands were too high and that he was not evaluating the case right

4

because he "was too stupid to know how to do it."  (Id).  Arnold apparently also told Hadi that "he was not going to tolerate one of his employees giving State Farm a hard time."  (Hadi 163).

Sometime after his meeting with Arnold, Hadi was informed that State Farm would waive its subrogation rights with respect to payments made under his medical payments coverage.  Hadi accepted a settlement in the amount of $4,000.00, for a total bodily injury settlement of $9,000.00 (including the $5,000 already paid under his medical payments coverage) and released Judy Brooks from further liability.  Hadi had also received $1,269.46 in rental car charges in addition to payment for repairs to his vehicle[3].

After the incident involving Arnold,  Hadi came to learn that his future with FFA was now in jeopardy.  According to Hadi, at his performance review, attorney Susan Blasik-Miller told him that Arnold had told her that "[Arnold] was going to use his vote against me regarding partnership and advancement at the firm and then later that he was going to fire me, yes."  (Hadi Depo at p. 180). Miller told him "This is a serious matter, and you cannot become partner over it, and you're off the partnership track because of it."  (Id.  at 151).  Hadi also claims that Miller told him that Arnold holds grudges and "he has an ax to grind with you." (Id. at 180).  Hadi was told by another partner in the firm, Wayne Wiate, that "this type of thing could ruin [Hadi's] career at the firm." (Id. at 149).  Miller denies making these statements to Hadi and stated that she specifically told Hadi that his job was secure.  Hadi's supervisor Neil Freund denied that Hadi's job was in jeopardy and testified that he told Hadi that his job was secure.

Feeling that his career was doomed if he stayed at FFA, Hadi resigned and took a lesser paying position in Dayton, Ohio.

---

[3]      It is unclear from the record exactly how much was paid for repair work on Hadi's car.

II.     **LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). The evidence, all facts, and any

6

inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## III.  Analysis

### A.  Count I.  Tortious Interference with an employment relationship.

The tort of interference with an employment relationship occurs "when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A&B - Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,  73 Ohio St. 3d 1, 14, 651 N.E.2d 1283, 1294 (Ohio, 1995).  In order to establish a claim for tortious interference with employment relationship, the plaintiff must show: "1) the existence of an employment relationship between plaintiff and the employer; 2) the defendant was aware of this relationship; 3) the defendant intentionally interfered with this relationship; and 4) the plaintiff was injured as a proximate result of the defendant's acts."  Lennon v. Cuyahoga County Juvenile Court, No. 86651, 2006 Ohio 2587 (Ct. App. Ohio May 25, 2006).    Tortious interference with business relations does not require a showing of actual malice.  Dryden v. Cincinnati Bell Tel., 135 Ohio

App. 3d 394, 400  734 N.E.2d 409, 414 ( Ct. App. Ohio 1999).  Whether the interference is improper or privileged depends upon several factors, including  (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests interfered with, (4) the interests sought to be advanced by the actor, (5) the societal interests in protecting the freedom of action and the contractual interests of the plaintiff, (6) the proximity or remoteness of the interference, and (7) the relations of the parties.  Dryden, 135 Ohio App.3d at 401 (citing Section 767 of the Restatement of the Law 2d, Torts) .

Hadi has established sufficient evidence to meet the first two elements of his claim: he was an employee of FFA and State Farm was aware of this relationship.  In order for his claim to survive summary judgment, Hadi must also establish at least a question of fact as to whether State Farm intentionally interfered with this relationship and that he suffered an injury as a result of State Farm's conduct.

In his complaint, Hadi claims that State Farm intentionally interfered with this employment relationship so as to force him to accept an "unreasonably low" settlement offer. Plaintiff asserts that the intentional nature of the contact by Capadonna with Vollmar is evident from both the content of the communication and the nature in which the communication was initiated.  Specifically, that State Farm sent an adjuster who had both personal and professional relationships with partners in Hadi's law firm to inform the firm that Hadi had a contentious claim involving State Farm and that Hadi was attempting to obtain more favorable or special treatment based on his position with the firm. It is Hadi's position that State Farm, through the actions of Capadonna, gave false information about Hadi to his employer, knowing that such information would cause him friction with his employer.

A claim for tortious interference requires that the intermeddler intentionally act to

interfere with the employment relationship between the plaintiff and his employer.  Bauer v. Commercial Aluminum Cookware Co., 140 Ohio App. 3d 193, 198,  746 N.E.2d 1173, 1177 (Ct. App. Ohio 2000).  Hadi has presented no evidence of such an intention on the part of State Farm. At most, Hadi has perhaps shown a negligent interference with his employment relationship. Hadi's complaint asserts that State Farm interfered with his employment relationship so that he would be compelled to accept a lower settlement offer.  The fact that State Farm may have sought this outcome does not establish that it also sought to interfere with his employment.  In fact, Hadi points to no evidence suggesting that it was State Farm's intention to do so.  The only evidence relating to State Farm's motive was its intent to obtain FAA's assistance in getting Hadi's claim settled.  That his employment relationship might have been adversely  affected by the communication from Capadonna does not establish that State Farm actually intended that result, even though it may have been a foreseeable risk. Hadi has not presented any evidence in support of this element of his claim for tortious interference with an employment relationship.

Because there are no issues of material fact with regards to the required third element of his claim, the court need not consider whether Hadi was damaged as a result of the alleged interference.

### B.        Count II.         Breach of duty of good faith and fair dealing.

Generally, an insurer has a duty to exercise good faith in the processing and payment of valid claims of its insured. Beever v. Cincinnati Life Ins. Co., No. 02AP-543, 2003 Ohio 2942, (Ct. App. Ohio June 10,  2003).   An insured may assert a claim for bad faith if an "insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo v. Homestead Ins. Co. 71 Ohio St.3d 552, syllabus, 644 N.E.2d 397  (Ohio 1994).  In cases

where an insured asserts a claim for bad faith, the insurer's liability does not arise from the breach of the terms of the insurance policy, but from "the breach of the positive legal duty imposed by law due to the relationships of the parties." <u>Gillette v. Estate of Gillette</u>, 163 Ohio App. 3d 426, 431, 837 N.E.2d 1283, 1287 (Ct. App. Ohio 2005). Due to the contractual relationship requirement, "Ohio courts have repeatedly held that a third-party claimant cannot assert bad-faith claims against an insurer." <u>Id</u>.

The plaintiff asserts that the general rule does not apply to him because he is also an insured of State Farm and therefore is owed a duty of good faith. Although Hadi is an insured of State Farm, he is alleging that State Farm acted in bad faith in settling his claim for damages under the Brooks policy. Hadi was a third party claimant under the Brooks policy and was not owed a duty of good faith. The <u>Gillette</u> case, cited *supra*, is instructive. In <u>Gillette,</u> the wife of the insured was injured while her husband was driving a motor vehicle. Although not a named insured, the insurer agreed that Mrs. Gillette was an "insured"under the policy. Mrs. Gillette made claims under the medical payments coverage, the family compensation coverage and the auto liability coverage. The auto liability coverage provided that the insurer would pay for property and bodily injury damages for which an insured was legally liable as a result of an accident. When she was unsatisfied with the insurer's handling of the claim, Mrs. Gillette sued the insurer for bad faith.

The <u>Gillette</u> court concluded that although she was an insured, when making a claim under the auto liability section, Mrs. Gillette assumed the position of a third party claimant. As such, Mrs. Gillette could not bring a bad faith claim against the insurer with regards to the handling of the auto liability claim because she was seeking benefits not based on a duty owed directly to her, but rather based on the duty owed to the co-insured. In reaching the conclusion

10

that she could not maintain a bad faith claim on the auto liability coverage, the court noted that as a third party claimant, Mrs. Gillette was in an "antagonistic position" to the co-insured and to the insurer and if a duty of good faith was owed to her, the insurer would be placed in the untenable position of owing inconsistent duties to each insured.  Id at 433, 1288.  She could, however, bring a bad faith claim for the insurer's handling of the medical payments and family compensation coverage because on those claims she stood as a first party claimant.

Based on the reasoning set forth in  the Gillette case,  Hadi cannot maintain an action for breach of good faith and fair dealing against State Farm with regards to the handling of the auto liability coverage under the Brooks' policy.  Although Hadi could maintain an action for breach of good faith for State Farm's handling of his medical payments coverage under his own policy, he has not alleged such a claim and does not allege any wrongdoing under that provision.

There are no material issues of fact with regards to plaintiff's claim for breach of the duty of good faith and fair dealing and therefore, defendant is entitled to summary judgment on this claim.

## C.    Count  III.    Breach of contract

A breach of contract occurs when a party demonstrates: 1) the existence of a binding contract, 2)  the non-breaching party performed its contractual obligations, 3) the other party failed to fulfill its contractual obligations without legal excuse, and 4) the non-breaching party suffered damages as a result of the breach.  Garofalo v. Chicago Title Ins. Co.  104 Ohio App. 3d 95, 108, 661 N.E.2d 218 (Ohio 1995).

In his complaint, the plaintiff alleges that State Farm breached its contract with Hadi by: 1) sharing details of his claim with FFA; 2) contacting his employer to pressure Hadi into

accepting an unreasonably  low offer; 3) refusing Hadi's settlement offer without explanation or reason; 4) offering plaintiff unreasonably low settlements; 5) failing to pay plaintiff's full medical expenses according to the terms and limits of the policy; 6) forcing State Farm's subrogation unit to waive the lien owed to the medical payments unit; 7) failing to notify Hadi of issues with "double with" claims; and 8) protecting a tortfeasor's policy to the detriment of a State Farm insured.  According to Hadi, these actions breached his contract with State Farm and caused him to incur monetary damages.

Much of the plaintiff's breach of contract claim involves actions which State Farm undertook with regards to the Brooks policy and not Hadi's policy.  If State Farm shared information with FFA and did so in an effort to pressure Hadi into accepting a low settlement on the auto liability claim, these actions stemmed from Hadi's third party claim under the Brooks policy.  Even if State Farm's offer was unreasonably low, the offer was not on a first party claim under Hadi's own policy but was an offer on his third party claim. Hadi's contract with State Farm is not implicated by third party claims against another insured.   Thus, the actions complained of do not implicate a contract between Hadi and State Farm and therefore do not give rise to a claim for breach of contract.

Hadi also claims that State Farm breached the contract by failing to pay his medical expenses and failing to notify him of the policy for handling "double with" claims.  If State Farm had failed to timely pay Hadi's medical bills under his own policy, he could state a claim for breach of contract. Id at 435, 1290.  However, Hadi makes no such allegation. The uncontroverted evidence is that Hadi's own policy paid his medical bills on time and he makes no complaint about how his medical payment claims were processed.  Hadi also claims that State Farm breached its contract by failing to inform him that Wilborn was not handling his

medical payments claim along with the bodily injury claim. Hadi alleges he would not have used his medical payments coverage had he known that Wilborn was not acting in his policy's best interest when she told him to submit claims under his own policy. However, he has not shown that he was damaged in any way by this method of handling his claim. Hadi has not shown how his contract was breached by the conduct of the third party claims adjuster. Because none of Hadi's allegations involve breach of his contract with State Farm, the defendant is entitled to summary judgment on Hadi's breach of contract claim.

### D. Count IV. Intentional misrepresentation/fraud

To establish a claim for intentional misrepresentation/fraud under Ohio law, the plaintiff must show: (1) a representation or, where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury that is proximately caused by the reliance. Andersons, Inc. v. Consol, Inc., 348 F.3d 496, 505 (6th Cir. 2003) (citing Carpenter v. Scherer-Mountain Ins. Agency, 135 Ohio App. 3d 316, 733 N.E.2d 1196, 1205 (Ct. App. Ohio, 1999)). A claim for fraud may be based not only on affirmative misrepresentations but also on the "failure of a party to a transaction fully to disclose facts of a material nature where there exists a duty to speak." Andersons, 348 F.3d at 505.

Hadi alleges that State Farm, by the actions of claims adjuster Wilborn, made false and material misrepresentations regarding the investigating, processing and settlement of plaintiff's claim. In particular, Hadi alleges that Wilborn misrepresented that State Farm assigns only one claim adjuster to both insureds in a "double with" claim. He further asserts that Wilborn falsely

represented that she was handling the investigation and processing of Hadi's medical payment claim as well as the property damage and bodily injury claims. Hadi alleges that Wilborn falsely informed him that she would submit his medical bills under Hadi's policy for Wilborns convenience and that Hadi's policy would be reimbursed after his claim was settled. Hadi also alleges that Wilborn failed to inform him that she intended to reserve the right to refuse to pay his medical expenses after she submitted them under this policy.

Even if Wilborn made the misrepresentations (and it appears that at the very least, she did fail to disclose that she did not necessarily have to provide sufficient settlement monies to pay Hadi's medical payment claims back), the plaintiff has failed to establish that an injury occurred as a result of the misrepresentations. State Farm had a contractual right to have the $5,000.00 spent from Hadi's medical payments coverage reimbursed by Hadi from any settlement under the Brooks' policy. If State Farm had not waived this right when Wilborn offered Hadi less than the amount his policy paid, then Hadi could claim that he had been damaged by Wilborn's misrepresentation. However, State Farm did waive its lien which resulted in Hadi obtaining a $3,130.00 check in settlement of his claim. Thus, Hadi received $5,000.00 in medical payments under his policy, over $1200.00 in property damage payment, an additional $890.00 for his providers and a check payable to him for $3,130.00. Hadi's own expert testified that $10,000.00 to $13,000.00 would be a reasonable settlement amount for Hadi's claims. (See Deposition of Terry Sershion at p. 146). Hadi received a total settlement that was very close to that amount. Hadi has presented no evidence that he will be adversely affected, in the form of increased insurance rates or otherwise, by virtue of the waiver of his policy's lien against Mr. Brooks' policy. Without some evidence of an injury caused by State Farm's misrepresentation, Hadi cannot establish a claim for intentional misrepresentation/fraud

and defendant is entitled to summary judgment on this count.

**E.     Count V.     Negligent misrepresentation**

A negligent misrepresentation occurs when one supplies false information for the guidance of others.  Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App. 3d 137, 149, 684 N.E.2d 1261, 1269 (Ct. App. Ohio 1996).  A negligent misrepresentation does not lie for omissions; there must be some affirmative false statement.  Grimm v. U.S.  Life Credit Life Ins. Co., No. 2-98-35, 1999 Ohio App. LEXIS 2445 (Ct. App. Ohio May 19, 1999).  Under Ohio's law of negligent misrepresentation, "one who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Textron Fin. Corp., 115 Ohio App. 3d at 150 (citing Delman v. City of Cleveland Heights, 41 Ohio St. 3d 1, 4, 534 N.E.2d 835, 837 (Ohio 1989).  As with a fraud claim, the plaintiff must also show that the misrepresentation on which he justifiably relied was material.  Andersons, Inc. v. Consol, Inc., 185 F. Supp. 2d 833, 844 (N.D. Ohio 2002).

The analysis applied in Count IV applies to this claim as well.  Hadi has simply failed to establish that any pecuniary loss occurred.  Even if Wilborn negligently misrepresented facts to Hadi as he alleges, he was not injured. He has not established any detrimental result caused by State Farm's waiver of its medical payments lien under his policy.  As such, he cannot maintain a claim for negligent misrepresentation and defendant is entitled to judgment on this claim.

**F.     Count VI.     Defamation**

The essential elements of the common law action of defamation are : "1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of publisher and; 4) actionability of the statement irrespective of special harm or the existence of special harm cause by the publication." Lawson v. AK Steel Corp. 121 Ohio App.3d 251, 256, 699 N.E.2d 951 (Ct App Ohio 1997),  In Ohio, there are two types of defamation: defamation per se and defamation per quod. Defamation per se "is defamatory on its face and by the very meaning of the words spoken or written."Fenley v. Bowman, No. CA98-02-013, 1998 Ohio App. LEXIS 3876 (Ct. App. Ohio August 24, 1998).  A statement is defamation per se if it "tends to injure a person in his or her trade, profession, or occupation and both damages and actual malice are presumed to exist." Knowles v. Ohio State Univ., Franklin App. No. 02AP-527, 2002 Ohio 6962  (Ct. App. Ohio Dec. 17, 2002).  Defamation per quod exists "where words appear harmless but become defamatory by innuendo or extrinsic evidence." Id.  A court must determine whether a statement is defamatory per se because the determination involves a question of law. See Matalka v. Lagemann 21 Ohio App. 3d 134, 136, 486 N.E.2d 1220, 1222 (1985).

In the instant case Hadi asserts that State Farm, by the actions of its agents Wilborn, Faloon and Capadonna, made defamatory statements about him to his firm.  Hadi has established sufficient evidence to raise a question of fact about whether a false statement was made about  him by Capadonna to a partner in FFA, Andrew Vollmar. Specifically, Mr. Vollmar testified that Capadonna told him that Hadi was threatening to sue State Farm and that he had dropped the firm's name into the claims process and had stated that Hadi had "mentioned our firm's name and stated something to the effect of his surprise about the way

16

State Farm people were treating him because he worked for one of their defense firms."

(Vollmar Depo at p. 9-10).  Vollmar further testified that the client was "telling me that it was

their perception that [Hadi] was leveraging [his position with FFA] and that relationship." (Id at

13).  Hadi denies that he ever discussed his employment with anyone at State Farm and did not

know that State Farm was a client of FFA. He further denies that he sought special treatment as

a result of that relationship and used his cell phone and personal stationary to communicate with

State Farm.  Thus there is a material question of fact with regards to whether a false statement

was made about him.

　　　　Hadi must also establish sufficient evidence that the alleged statement, if in fact made,

was defamatory.  The statement made by Capadonna imputed a lack of integrity or misconduct

on the part of Hadi. It has been held that a "defamatory charge imputing to a professional man

such as an attorney or a physician lack of due qualification, misconduct, or want of integrity is

slanderous and actionable per se." High v. Supreme Lodge of World, 214 Minn. 164, 167,  7

N.W.2d 675, 678 (Minn. 1943); In re Palmer, 8 Ohio Cir. Dec. 508 (Ohio Misc. 1897) (good

moral character is a prerequisite of admission to the bar); see also, Gearhart v. WSAZ, Inc., 150

F. Supp. 98 (E.D. KY 1957) (a statement that imputes want of integrity, malfeasance or

misfeasance, or is calculated to diminish public confidence in the plaintiff is actionable per se);

Shoemaker v. Cmty. Action Org. of Scioto County, Inc., No. 06CA3121, 2007 Ohio 3708 (Ct.

App. Ohio July 16, 2007)  (plaintiff presented a claim for defamation per se when he testified

that the statements made concerning his alleged sexual harassment of a co-worker were false

and caused him to lose his job).

　　　　It is evident from Vollmar's reaction to the statement that such statement imputed

misconduct to Hadi. Vollmar testified that he was immediately concerned by the notion that

Hadi expected special treatment.  It at the very least suggested that Hadi was improperly using his professional position as an attorney with FFA to obtain more favorable treatment in a personal matter.  Defendant concedes that the statement, if made by Capadonna, impugned Hadi's character.  (Doc 100-3 at p. 27 ).  The Supreme Court of Ohio has stated that  "in admitting a lawyer, and granting him a license to practice law, it is on the implied understanding that the person receiving such license shall in all things demean himself in a proper manner and abstain from such practices as cannot fail to bring discredit upon himself, the profession and the courts."  In re McBride, 164 Ohio St. 419, 426, 132 N.E.2d 113, 118 (Ohio 1956).  The statement by Capadonna reflected poorly on Hadi's professional integrity and, if the statement was in fact made, constituted defamation per se.

Hadi has further established a question of fact as to whether the statement was an unprivileged publication to a third party.  A "publication" of defamatory matter is "its communication intentionally or by a negligent act to one other than the person defamed." Ball v. British Petroleum Oil, 108 Ohio App. 3d 129, 136, 670 N.E.2d 289, 294 (Ohio 1995) (citing 3 Restatement of the Law 2d, Torts (1965), Section 577(1)).  A private plaintiff, as opposed to a public figure, need only demonstrate that the defendant was at least negligent in publishing false statement, for purposes of defamation claim under Ohio law. Taylor Building Corp. of America v. Benfield 507 F.Supp.2d 832 (S.D.Ohio, 2007).  A publication was made when Capadonna informed Vollmar about Hadi's claim with State Farm and stated that he was attempting to use his position with FFA to obtain more favorable treatment.  It is sufficient that the defamatory matter is communicated to one person only, even though that person is enjoined to secrecy.  Kinney v. Kroger Co., 146 Ohio App. 3d 691, 696,  767 N.E.2d 1220, 1224 (Ct. App. Ohio 2001) (citing 3 Restatement of the Law 2d, Torts (1965), Section 577(1)).

Hadi has presented a prima facie case of defamation. <u>Gray v. Ryder Truck Rental, Inc</u>., No. 83AP-123, 1984 Ohio App. LEXIS 9610 (Ct. App. Ohio Mar. 22, 1984)(plaintiff's prima facie case is made out "when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character"). If a plaintiff can establish a prima facie case of defamation, a defendant may then invoke a conditional or qualified privilege. <u>Jackson v. City of Columbus,</u> 117 Ohio St. 3d 328, 331, 883 N.E.2d 1060, 1064 (Ohio 2008) (citations omitted). Even if the statement is defamation per se, it is not actionable if the communicator had a qualified privilege. <u>Smith v. Klein</u> 23 Ohio App.3d 146, 492 N.E.2d 852 (Ct. App. Ohio 1985)(defamatory statements that injure a person in his trade or profession, which would otherwise constitute defamation per se, are not actionable per se when the communicator has a qualified privilege). The defense of qualified privilege is an affirmative defense that must be specifically raised in an answer. <u>Douglas Electric Corp. v. Grace</u>, 70 Ohio App. 3d 7, 12, 590 N.E.2d 363, 366 (Ct. App. Ohio 1990) (the existence of a qualified privilege is also an affirmative defense that must be pled separately from a general denial). Defendant failed to raise the defense of privilege in their pleadings and as such have waived it. <u>Cooper v. Grace Baptist Church, Inc.</u>, 81 Ohio App. 3d 728, 612 N.E.2d 357 (Ct. App. Ohio 1992) (by failing to raise the defense of privilege in their pleadings, the defendants waived it).

Even if the defendant had properly raised the issue of qualified privilege, genuine issues of material fact remain which preclude summary judgment. <u>Trebilcock v. Elinsky</u>, No. 1:05 CV 2428, 2007 U.S. Dist. LEXIS 38416 (N.D. Ohio May 25, 2007) (only if underlying facts are not in dispute does the court make a determination as to whether a privilege existed). A "qualified privilege is recognized when a commonality of interest exists between the publisher and

recipient of the communication and the communication is of a kind reasonably calculated to protect or further that interest." Daubenmire v. Sommers, 156 Ohio App. 3d 322, 350, 805 N.E.2d 571, 593 (Ct. App. Ohio 2004). In determining whether a qualified privilege exists, the court must consider the essential elements of "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." Jacobs v. Frank, 60 Ohio St. 3d 111, 114, 573 N.E.2d 609, 613 (Ohio 1991)(citations omitted).

Defendant does not address whether the statements were privileged as it relates to plaintiff's defamation claim. However, in its arguments against plaintiff's tortious interference claim, defendant asserts that any communication between Capadonna and Vollmar was justified and privileged. Specifically, State Farm argues that it had a legitimate and legally protected right to full confidence in its counsel and to inquire about any potential conflict of interest. State Farm reasonably had an interest in ensuring that there would be no conflict of interest and that Hadi would not be assigned to any State Farm cases while his claim was pending. However, the court finds that Hadi has presented sufficient evidence to raise a question of fact with regards to whether the communication was made in good faith, in the proper manner, limited to its proper purpose, and made to the proper parties. Griffis v. Klein, No.22285, 2008 Ohio 2239 (Ct. App. Ohio May 9, 2008) (finding genuine issues of material fact with regard to whether Defendant could satisfy qualified privilege defense).

The statement attributed to Capadonna was not limited in scope to this purpose and was not made in a proper manner or to proper persons. Capadonna was not the adjuster assigned to the Hadi case and, according to State Farm's own policies, should not have been given any information about Hadi's claim. State Farm may have had a good faith reason for inquiring

about a conflict of interest, but it is unclear why State Farm needed to have an uninvolved adjuster discuss the matter with an attorney who was not one of Hadi's supervisors. Thus, there is a question of whether State Farm, via Faloon, initially defamed Hadi in presenting the defamatory information to Capadonna. In addition, the purported reason for the communication with FFA was to determine whether a conflict of interest existed. However, Capadonna's comments regarding Hadi's seeking favoritism went beyond the limited purpose of determining whether a conflict existed. There was no reasonable or good faith purpose behind communicating this information when inquiring whether Hadi worked on any State Farm files that would constitute a conflict of interest. If Capadonna's communication with Vollmar was limited to asking about Hadi's involvement in State Farm cases to determine the presence of a conflict, then the communication would be privileged as a good faith communication with limited and proper purpose. However, the statement as testified to by Vollmar went beyond inquiry into a potential conflict. Rather, the statement, as defendant concedes, went directly to the plaintiff's character. (See 100-3 at p. 27).

Finally, when a plaintiff "pleads and establishes defamation per se, the plaintiff need not allege or prove any special damages. In fact, general damages are presumed and nominal damages are available in any event." Shoemaker v. Cmty. Action Org. of Scioto County, Inc., No. 06CA3121, 2007 Ohio 3708 (Ct. App. Ohio July 16, 2007).

The plaintiff has set forth sufficient evidence to raise genuine issues of material fact with regards to his defamation claim. Thus summary judgment on this count must be denied.

**G.      Count VII.      Intentional infliction of emotional distress.**

To defeat a motion for summary judgment, plaintiff must establish that a question of fact remains with regards to the elements of a claim for intentional infliction of emotional distress: 1) the defendant intended to cause the plaintiff serious emotional distress; 2) the defendant's conduct was extreme and outrageous; and 3) the defendant's conduct was the proximate cause of plaintiff's serious emotional distress. <u>Phung v. Waste Mgt., Inc.</u>, 71 Ohio St. 3d 408, 410, 644 N.E.2d 286, 298 (Ohio 1991). Extreme and outrageous conduct is conduct that goes beyond all possible bounds of decency and is so atrocious that it is "utterly intolerable in a civilized society." <u>Yeager v. Local Union 20</u>, 6 Ohio St.3d 369, 375, 453 N.E.2d 666. (Ohio 1983). "Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient to sustain a claim for relief. <u>Id</u>. In Ohio, "only rarely will offensive conduct reach the level necessary to support a claim for intentional infliction of emotional distress." <u>Scarabino v. E. Liverpool City Hosp.</u>,155 Ohio App.3d 576, 802 N.E.2d 188, 190 (Ct. App. Ohio 2003). For instance, even conduct which can be characterized as malicious or criminal is not necessarily considered outrageous. <u>See</u> <u>Harcourt v. Cincinnati Bell Telephone Co.</u>,383 F.Supp.2d 944 (S.D.Ohio, 2005.) In addition, the emotional distress suffered from the outrageous conduct must be "serious." <u>Myers v. Riley</u>, No. H-95-075, 1996 Ohio App. LEXIS 3926 (Ct. App. Ohio Sept. 13, 1996). Serious emotional distress is described as an emotional injury that is severe and debilitating. <u>Id</u>. Such distress occurs when a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances. <u>Id</u>.

The plaintiff has failed to establish that there are any genuine issues of material fact that remain with regards to his claim for intentional infliction of emotional distress. First, plaintiff

has not established that the defendant intended to cause him serious emotional distress nor that defendant's conduct was "extreme and outrageous." Even if he had, however, plaintiff has utterly failed to establish that he has suffered serious emotional distress. He cannot point to any evidence that his distress was such that a "reasonable person would be unable to cope." Myers, 1996 Ohio App. LEXIS 3926. Hadi testified that he had not sought any medical care related to emotional distress. He has not had any nightmares about the situation. The only harm Hadi testified to suffering was that he had to move away from friends and family and a job that he felt he would be successful at prior to the incident with State Farm. Hadi has presented no case law to support his claim that the alleged harm was serious enough to give rise to a claim for intentional infliction of emotional distress. Accordingly, defendant is entitled to summary judgment on this claim.

### H.     VIII.   Negligent infliction of emotional distress.

A claim of negligent infliction of emotional distress is limited to instances "where the plaintiff has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." Heiner v. Moretuzzo, 73 Ohio St.3d 80, 86-87, 652 N.E.2d 664, 669 (Ohio 1995). Negligent infliction is "limited to such instances as where one was a bystander to an accident or was in fear of physical consequences to his own person." Walkosky v. Valley Mem'ls, 146 Ohio App. 3d 149, 153, 765 N.E.2d 429, 432 (Ct. App. Ohio 2001).

Plaintiff has not presented any evidence that would support this claim and as he did not respond to defendant's motion to dismiss this claim, apparently concedes that summary judgment is proper on this count. Accordingly, defendant is entitled to summary judgment on

this claim.

III.     **Conclusion**

Based on the foregoing analysis, State Farm's motion for summary judgment (doc. 100) is granted in part and denied in part. The defendant is granted summary judgment on Counts I, II, III, IV, V, VII and VIII.  The defendant is denied summary judgment on Count VI.

It is so ORDERED.

s/ James L. Graham_____
James L. Graham
UNITED STATES DISTRICT JUDGE